Next case is Cooley v. CA Statewide Law Enforcement Association. When you're ready, Mr. Mitchell. Thank you, Your Honors. May it please the Court. Jonathan Mitchell on behalf of Plaintiff Appellant Terry Cooley. Many public employees have been attempting to resign their union membership in response to the Supreme Court's ruling in Janus. In Belgao v. Inslee, this Court held that public employees that signed contracts prior to Janus that require the continued payment of membership dues are legally bound to honor their contractual commitments. This case, however, differs from Belgao in two important respects. First, the union claims that Mr. Cooley's right to resign his union membership is limited by a contract between the union and the State of California, which purports to prohibit employees from resigning their union membership unless they do so within 30 days before the expiration of the MOU. But Mr. Cooley is not a party to that contract, and he cannot be bound by those terms. A public sector union cannot limit an employee's right to resign from the union by entering into a contract with a state employer that purports to limit the constitutional rights of its members. And any such provision that might exist in a collective bargaining agreement between a union and a state employer is unconstitutional and cannot be enforced. He signed up before Janus, right? Correct, he did. So what was the constitutional right that he had prior to Janus? He had a constitutional right to resign his membership in the union. And where does that come from? That comes from decisions such as Abood, decisions such as Roberts. There is a constitutional right not to be a member. Grounded in the First Amendment? Yes. Due process? The First Amendment.  Yes. Compulsory union membership was unconstitutional even before Janus, Your Honor. Janus is not compulsory, though. Who forced him to join the union? No one forced him to join. So why do you call it compulsory? Because they won't let him resign once he wanted out. That's a different – that's a different – nobody forced him to join the union, correct? That's correct, Your Honor. We're not claiming that he was forced. He wasn't compelled to join the union. He was not compelled to join, but what he was compelled to do was to remain in the union once he changed his mind. At the time that he voluntarily joined the union, he agreed to the limitations on canceling memberships and withdrawal of dues. He agreed to that provision, right? Your Honor. There's no indication that he didn't know that those provisions were in the agreements, is there? Your Honor, I respectfully disagree with that characterization. All right. Tell me what your disagreement is. If Your Honor looks at the membership application, which we reprinted in our brief at the bottom of page 17, the membership application says – and he initialed this application – it says, and I'm quoting, it says, per the Unit 7 contract and state law, there are limitations on the time period in which an employee can withdraw as a member. That document is referring to the Unit 7 contract that existed on the date he initialed the membership application. So on December 17, 2013, the Unit 7 contract in existence was the 2013 to 2016 MOU, and that contract between the union and the state of California required members of the union to stay in the union until June 1, 2016. It did not purport to incorporate the future MOU that existed from 2016 to 2019, and that's the MOU that the union is trying to bind Mr. Cooley to. So the most that Mr. Cooley possibly agreed to in this membership application was to promise to remain in the union until June 1, 2016. He never initialed any document that incorporates by reference the provision of the MOU from 2016 to 2019. That's the contract the union is trying to hold him to, and that contract did not even exist on December 17, 2013, which was the date on which he initialed this membership application. And the district court agreed with us on this much. The district court acknowledged in its opinion that when Mr. Cooley initialed this membership application in 2013, the only MOU that existed at that time was the 2013 MOU, and that document says that union members have to stay members until June 1, 2016. But the district court never explained in its opinion how Mr. Cooley possibly could have agreed to the terms of a future MOU that didn't even exist when he initialed the membership application. So even if we grant the union everything that it's saying about how Mr. Cooley signed up in this membership application and somehow incorporated the terms of the state MOU by reference, the most that Mr. Cooley could possibly have agreed to was to stay in the union through 2016. So let me ask you this. So is your argument that once the earlier MOU expired, the union had to go and they negotiated a new one, the union had to go to each existing member and get them to rejoin? Is that the argument? I'm sorry. That's not our argument at all. They're union members. Right. Right? Yes, they are members. They negotiate a new memorandum of understanding, and when they, under the new provision, they can only withdraw from the union or terminate their membership 30 days before the end of the next contract. Why doesn't that just bind everybody? I don't understand. Because the union has no authority to limit or waive the constitutional rights of its members to resign from the union simply by entering into a contract with the state. If the union wants to have its members agree to limit their right to resign, it needs to enter into an agreement with those members. It can't do that by entering an agreement with the state. We're not suggesting that Mr. Cooley ceased to be a member and had to rejoin. That's not our claim at all. The question, Your Honor, is did Mr. Cooley waive his constitutional right to resign from the union by signing a document that made a contractual commitment under BELGAP? And the answer to that question is no, because what Mr. Cooley initialed on December 17, 2013, was at most a promise to stay in the union. Let me ask you this. What is the case that supports your contention that the union could not require him to remain to limit his ability to terminate his union membership the way they did? Abood. Abood? Yes. I mean, public sector union shops have never been allowed. The public sector agency shop was permitted until Janus, but there has never been a regime in which compulsory union membership could be required as a condition of public employment. I guess we're just, I'm having a hard time because I think we're seeing things differently. Yeah. Your Honor, the premise of our argument, and perhaps we're disagreeing on the premise, but the premise of our argument is that public sector employees have always had a constitutional right to resign from the union, even prior to Janus. They still had to pay the union if they resigned. They still had to pay agency fees as non-members prior to Janus, but they have always had the constitutional right to leave the union. Janus gave them an additional right, which was after you quit the union, you can withhold payments from the union as well. But when Mr. Cooley said, I'm resigning my union membership after Janus, the union was constitutionally obligated to honor that unless Mr. Cooley executed a waiver of that constitutional right. The union... Your Honor, do you have a question? No, no, no. I see. I didn't want to talk over you. One question, Mr. Mitchell. So other than a change in the applicable date with the follow-up contract, it technically was essentially the same. The earlier 2013 contract limited Mr. Cooley's ability to withdraw from the union, correct? Right. The MOU from 2016 had the same type of maintenance of membership requirement. But the problem is, Your Honor, this was an agreement between the union and the state. It wasn't an agreement between the union and Mr. Cooley. And the union can't go to the state employer and agree to limit the constitutional rights of its members to resign. The union, if it wants to waive the constitutional right of its members, it needs the members themselves to execute that type of waiver. When they renegotiated the new MOU, did the union members have to vote on it, say, yeah, we approve this? I don't know whether they did vote on it or not, Your Honor, and I don't believe that's in the record. Again, I'm not sure whether that would be relevant because the question is whether there's been, on behalf of the individual member, a waiver, as was the case in Belgau. And the problem for the person in Belgau was that that employee had previously signed a document that promised to stay in the union. And I see my time is very close to expiring, and I would like to reserve time for rebuttal, but maybe I only have 10 seconds left. Is that right, Judge Winn? Yeah, no, that's fine. I'll give you two minutes for rebuttal. All right. If I could answer Judge Pius's question before closing. The issue, Your Honor, is whether there has been a valid waiver consistent with Belgau. And the difference in Belgau was the employee and the union together signed a contract where the employee agreed to limit his right under Janus to withhold payments from the union. We don't have any such agreement here. The most that has happened is that Mr. Cooley initialed the document in 2013 where he promised to stay in the union until 2016. He never executed anything that promised to maintain his membership in the union through 2019. And if I could stop now and save the rest of my time for rebuttal. I think we've got that part of your argument, so let's hear a response from Mr. Cooley. Thank you. May it please the Court, I am Christopher Cooley. I represent California Statewide Law Enforcement Association and California Association of Law Enforcement Employees. Before I get to the substance of Mr. Cooley's argument, I want to address briefly a procedural wall that Mr. Cooley has run into. And that is with the Labyrinthine First Amendment complaint that is at issue in this appeal. Because based on how the complaint has been pleaded and based on the appeal here, the state law claims, specifically those that pertain to consideration and to the 2016-2019 arguments that Mr. Cooley has made in this appeal, are no longer at issue. The First Amendment complaint contained five counts for injunctive relief, declaratory relief, monetary relief, conversion slash trespass to chattels and unjust enrichment. And Mr. Cooley argues in his reply that he is appealing from both his Section 1983 and state law claims. But Section 1983 is not pleaded as a separate count. And the only state claims are seemingly in Counts 4 and 5 for conversion slash trespass to chattels and unjust enrichment. Mr. Cooley argued in the reply as well in the same footnote that the prospective relief is now moot. On page 22 of the reply, Mr. Cooley explains what this means, stating both Counts 1 and 2 for injunctive relief and declaratory relief are now moot. And this is a big problem for Mr. Cooley because that means we're just left with Count 3 for monetary relief and Counts 4 and 5 for conversion slash trespass and unjust enrichment. And we actually aren't dealing with the enforceability of the membership cards at all. Again, those arguments dealing with consideration, acceptance, and whether the membership cards apply to the 2016 to 2019 CBA. The First Amendment complaint actually doesn't say anything about the enforceability of the membership card in those Counts 3, 4, and 5. It's only addressed in Count 1, specifically Paragraph 58, subsections B, E, F, and G, and Count 2, specifically in Paragraph 60, subsection B. Putting that aside and turning to the substance of Mr. Cooley's argument, I think we can all agree that the First Amendment is a sacrosanct right. But there is also a line of jurisprudence that we all agree states that the First Amendment can be waived with consent. And that's exactly what happened in Belgao. Belgao is on all fours with this case, and it slices through this Gordian Knot that Mr. Cooley has attempted to create in this appeal. And what I want to do is I want to focus on the prongs of the state action doctrine that were analyzed in Belgao. Because when you actually analyze those prongs, I think it makes it very clear how analogous that case is to this case here. Those two prongs, of course, were first, whether the claim constitutional deprivation resulted from the exercise of a right or privilege created by the state. And second, whether the defendant may appropriately be characterized as a state actor. For the first prong, the source of the violation, Mr. Cooley argues that CSLEA must show contract as enforceable first. But that's not correct. Contract does not need to be enforceable to be a source of the alleged harm, regardless of whether the membership card is enforceable. And we, of course, dispute that. The alleged harm still arises from that dispute centering around the membership card, which is a private contract. The second prong, that CSLEA is not a state actor. The state's role was merely ministerial processing of payroll and received no benefit from the arrangement. I'd like to point out that Mr. Cooley has dismissed the state defendants from this case. And I think that speaks volumes to the fact that the state really is not at issue in this appeal. It's just CSLEA, a private union that centers around a private contract. That previous argument, by the way, that Mr. Cooley had raised, that stated that a contract needs to be enforceable first before we can address the state action doctrine, does not apply at all to this second prong, whether or not CSLEA is a state actor. Now, Mr. Cooley, in his argument today, argued that Belgao is distinguishable from this case because this appeal is about the CBA and the state is a party to the CBA. But that's exactly what was at issue in Belgao. Belgao considered a CBA, just like here. Article 40 of the CBA in Belgao allowed dues deductions even after resignations. And this argument, by the way, that the CBA is what is the focal point of this case, is inconsistent with Mr. Cooley's previous argument that said, for the first prong, the membership card was actually the focus point of this case. As Mr. Cooley says in his reply on page 13, quote, the only possible contract that exists between Mr. Cooley and the union is the membership application that Mr. Cooley initialed on December 17, 2013. So if that's the only contract that is at issue in this case, how can it be that the state is involved in this case and that state action is implicated under the second prong of the state action doctrine? The court explained in Belgao that the state received no benefits as a pass-through for the dues collection and was actually opposed to the union at the negotiating table, just like here. And in Belgao, the state must have encouraged significantly the private activity. And just like in Belgao, there are no allegations of that in the first amendment complaint. There was no coercion or oversight, no symbiotic relationship, no ministerial processing, none of that. And so the reality is that there's no means of distinguishing Belgao on this prong of the state action doctrine. And Belgao really is on all fours with this case. And it is determinative. Now, having said all that, I want to turn to these more specific, I'll call them state law claims, because they're not really invoking constitutional principles so much as statutory and common law principles based in contract concerning offer and acceptance. And the one point I really want to address is this argument that Mr. Cooley made today in his briefing about the membership card not continuing after 2016. We have a significant amount of issues with that argument, as I'll address now. First, the argument ignores the fact that this membership card dealt with membership. Mr. Cooley agreed to become a member by joining the union and signing this membership card. He belonged to an organization. He did not stop belonging to the organization when the CBA was simply renegotiated. The membership card itself provides the terms of membership, stating that they're governed by the contract. And when it's renegotiated, the terms of the membership then change to what the terms are of the renegotiated contract. And I think that the terms of the membership card as well as the CBA from 2013 to 2016 show that. The membership card says per the Unit 7 contract and state law, there are limitations on the time period in which an employee can withdraw as a member. That kind of term would be superfluous and unnecessary if membership simply ended at the end of the CBA's date pre-renegotiation. If that was the case and new membership cards had to be provided to every union member, that would mean that term for withdrawal would not be necessary because you would automatically no longer be a member and new membership cards would need to be provided to the members. And that obviously is not attuned with what the language is of the membership card. And second, and this was something that was addressed in the district court order as well, Mr. Cooley's post-2016 performance is also consistent with the understanding that he remained a union member after the 2013 to 2016 CBA was renegotiated. After the 2016 CBA expired, Mr. Cooley remained in the union, he continued to pay union dues, he continued to receive the benefits of union membership. It was not at any point in time before Janus was decided that he ever said, wait a minute, I am not a member of this union, I did not agree to union membership. And the fact that Janus was decided in 2018 does not change that at all. He could have made the exact same argument before Janus was decided because again, that's really more of a contractual argument than it is a constitutional argument. Can you just clarify one thing for me and that is under the 2013-16 agreement, when was a member allowed to withdraw from the union? So the terms of the 2013-2016 CBA and the 2016-2019 CBA are identical. They both say that a member is able to withdraw within 30 days prior to the expiration of the CBA. They both say that and so that would have meant for the 2013-2016 CBA, Mr. Cooley could have resigned in June of 2016 just like he was allowed to do that in June of 2019. And we allowed him when he wanted to resign in June of 2019 to resign and that's why he is no longer a member of CSOEA. Okay, thank you. All right, thank you very much. Our question took you over time. Mr. Mitchell, I promised you two minutes for rebuttal, so you will have that two minute right now. Thank you, Your Honor. We're not claiming that Mr. Cooley's membership in the union ended when the MOU expired in 2016. We're claiming that the waiver of his right to resign from the union ended when that MOU expired. He, of course, remained a union member when the MOU was renegotiated, but he became a union member who now had the right to resign at any time, which was not a right that he had before given what the membership application in 2013 purported to say. With respect to the issue of pleading, Mr. Cooley is right that the claims for prospective relief are now moot because Mr. Cooley is out of the union. We acknowledge that in our brief. The claims for damages, however, remain live and those are the issues we are litigating. We clearly pleaded a claim for damages under Section 1983 in our first amended complaint, which is in the excerpts of record. And under a regime of notice pleading, we're not required to describe in our complaint why that membership agreement that he signed in 2013 is not the waiver of his constitutional right to resign. That level of detail is not required. On the state action point, state action here is clearly satisfied because we are talking about a contract that the union signed with the state of California, which they are attempting to enforce against Mr. Cooley in this case. In Belgal, the situation was a contract that a private individual signed with the public sector union. That's why Belgal concluded that state action was ineligible. That's not the situation here because we're attacking a contractual agreement that involves the state of California and the public sector union. And finally, your honors, we deny that this is a contract, the membership application that is. We explain all that in our brief. I know we didn't spend a lot of time on that argument today, but I don't want to in any way suggest that we're conceding that the membership application is a contract. The court can assume that it is a contract for the sake of argument. And even if it is, the most that was agreed to was a commitment to stay in the union until June 1st, 2016 and not a day beyond. I'm happy to answer any other questions the court may have. Otherwise, we respectfully ask the court to reverse. All right. Thank you very much. The matter is submitted.
judges: PAEZ, NGUYEN, Tunheim